Jennifer Rust Murray, OSB #100389
Email: jmurray@terrellmarshall.com
Toby J. Marshall, *Pro Hac Vice Forthcoming*
Email: tmarshall@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
1700 Westlake Avenue North, Suite 300
Seattle, Washington 98109
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| JAMES DUNN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NIKE, INC.,<br><br>Defendant. | No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff James Dunn ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Nike Inc., ("Defendant" or "Nike") and alleges, upon personal knowledge as to Plaintiff's own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

## I.    INTRODUCTION

1.    For approximately one year, the federal government charged tariffs on certain products, including consumer goods, imported into the United States under the International Emergency Economic Powers Act ("IEEPA").

CLASS ACTION COMPLAINT - 1

2. For businesses with international supply chains, absorbing IEEPA tariffs was costly. Nike's CFO publicly disclosed the company anticipated a gross incremental cost increase of approximately $1 billion from new tariff rates in fiscal year 2026, and later revised that figure up to $1.5 billion

3. Many businesses, including Nike, responded to the high cost of IEEPA tariffs by passing those tariffs through to consumers in the form of price increases.

4. On February 20, 2026, the Supreme Court of the United States held that those tariffs were not authorized by IEEPA and were thus illegal.

5. Following the Supreme Court's decision, businesses sought to recover the IEEPA tariffs they paid through initiating litigation in the International Court of Trade. In response the U.S. Customs and Border Protection ("CBP") announced a process to streamline refunds to businesses and other entities that paid IEEPA tariffs, but has not imposed any legal requirement that businesses who passed through the IEEPA tariffs refund the individuals who actually paid them.

6. In this case, the individuals that ultimately paid the IEEPA tariffs were undisputedly the consumers. Consequently, those consumers are entitled to a refund of the tariffs that the Supreme Court ruled were illegal when charged.

7. While Nike is able to recover refunds for the IEEPA tariffs it paid, Nike has not made any legally-binding commitment to return the same IEEPA tariffs it passed through to the consumers who bore the brunt of the illegal IEEPA tariffs. This lawsuit seeks to reverse this unjust result.

## II.     PARTIES, JURISDICTION & VENUE

8. Plaintiff James Dunn is a resident of the State of Pennsylvania. Plaintiff purchased an item from Nike that was subject to an increased price that was directly tied to IEEPA tariffs that Nike paid and passed through to him.

9. Defendant Nike, Inc. is a corporation with its principal place of business in Beaverton, Oregon. Nike is responsible for the pricing, marketing, distribution, and sale of its

CLASS ACTION COMPLAINT - 2

products in the United States. Nike develops, designs, manufactures, and sells athletic footwear and apparel. A significant portion of the products Nike sells are imported goods subject to IEEPA tariffs imposed by the United States government.

10.    This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

11.    The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding Defendant's obligation to return to the consumers who paid them the IEEPA duties and fees Defendant collected, as well as any IEEPA duty refunds Defendant recovers from the United States.

12.    This Court has personal jurisdiction over Defendant, because their principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of Oregon.

13.    Venue is proper under 28 U.S.C. § 1391 because a Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in and emanated from this District.

### III.    FACTUAL ALLEGATIONS

#### A.    NIKE'S BUSINESS

14.    Nike is one of the largest athletic footwear and apparel suppliers in the United States.

15.    In order to maintain a competitive edge, Nike maintains an international supply chain that includes factories in China, Vietnam, Cambodia, and Indonesia.

16.    Imported goods therefore account for most, if not virtually all, of Nike's retail sales in the United States. Because Nike imports most if not all of the goods it sells, the IEEPA tariffs directly increased Nike's cost of importing merchandise into the United States.

CLASS ACTION COMPLAINT - 3

**B.     IEEPA Tariffs**

17.     Beginning in February 2025, President Trump invoked the IEEPA to impose tariffs on imports from numerous foreign countries declaring national emergencies related to trade and supply chain concerns. Those executive orders imposed sweeping tariffs on imports from key U.S. trading partners, including duties of approximately 25 percent on many imports from Canada and Mexico and additional tariffs on imports from China that were layered on top of existing duties, resulting in substantially higher effective tariff rates on Chinese goods.

18.     The tariffs significantly increased the cost of imported consumer goods entering the United States, particularly for retailers and other businesses that rely heavily on international supply chains to source merchandise—like Defendant Nike.

19.     Under U.S. customs law, the importer of record is responsible for paying tariffs when goods enter the United States. Accordingly, importers of record—including major retailers such as Nike—were required to pay the IEEPA tariffs to U.S. CBP upon entry of covered merchandise into the country.

20.     Numerous importers challenged the legality of the IEEPA tariffs, arguing that the President lacked statutory authority under the IEEPA to impose tariffs of that nature.

21.     On February 20, 2026, the Supreme Court of the United States held that the challenged tariff regime was unlawful and that IEEPA does not authorize the President to impose tariffs of the type challenged in that litigation. This ruling invalidated the tariff orders issued pursuant to that statute. *Learning Res., Inc. v. Trump*, 607 U.S. __ (2026).

22.     Rather than announce any prospective limitation on the imposition of IEEPA tariffs, the Supreme Court's decision declared that there was no legal basis for imposing the IEEPA tariffs. In other words, the IEEPA tariffs were unlawful from the moment they were imposed and thus unlawful when businesses like Nike passed the tariff fees through to consumers.

23.     Shortly after the *Learning Resources* decision, CBP developed the Consolidated Administration and Processing of Entries (CAPE) to "streamline the submission and processing

CLASS ACTION COMPLAINT - 4

of valid refund requests for duties imposed under the International Emergency Economic Powers Act (IEEPA)."[1] The CAPE process was launched on April 20, 2026, and provides a way for importers of record to recover IEEPA tariffs by essentially just requiring submission of a spreadsheet and supporting declaration.

24.    News reports indicate that affected businesses have flocked to the CAPE process to obtain IEEPA tariff refunds. ABC News reported that "while the money will start flowing to businesses, consumers should not expect to see direct refunds."[2]

**C.    IEEPA Tariffs are Borne by Consumers**

25.    Economists widely recognize that tariffs are largely borne by domestic consumers rather than foreign exporters or the importing firms that formally remit the duties. That is because businesses can and do pass through the tariff fees on down the line to the end purchaser: the consumer.

26.    Economic studies examining recent U.S. tariff regimes consistently find that the cost of tariffs is passed through into higher prices paid by U.S. purchasers of imported goods. Surveys of U.S. businesses conducted by the Federal Reserve Bank of New York during the recent tariff period found that a large majority of firms facing tariff-related cost increases passed at least some portion of those costs through to their customers in the form of higher prices.

27.    Nike followed this same pattern during the tariff period. As a major importer of consumer goods, Nike faced increased costs resulting from tariffs on its products and took steps to address those cost pressures through pricing and merchandising decisions. Nike's quarterly SEC filings and earnings calls consistently flagged tariff volatility as a material risk, and the company's 10-Q filings corroborated quantitative gross margin impacts of $1 billion to $1.5 billion in incremental annual costs attributable to the IEEPA tariff regime.

---

[1] https://www.cbp.gov/trade/programs-administration/trade-remedies/ieepa-duty-refunds
[2] https://abcnews.com/Business/wave-tariff-refunds-hit-businesses-tomorrow/story?id=132854062

**D.    Nike Admitted Tariff-Related Price Increases**

28.    Nike publicly acknowledged, early in the tariff period, that tariffs would increase its costs and place upward pressure on consumer prices.

29.    On April 29, 2025, Nike joined as a signatory in a letter by the Footwear Distributors & Retailers of America ("FDRA") addressed to the President of the United States stating that: "The significant price increases from these tariffs will preclude these American consumers from having affordable footwear options…We are in fact the one industry where tariffs do not significantly increase domestic production; tariffs just become a major impact at the cash register for every family."

30.    On Nike's Q4 FY2025 Earnings Call on June 26, 2025, Nike's CFO Matt Friend disclosed that the company anticipated a gross incremental cost increase of approximately $1 billion from new tariff rates in fiscal year 2026, later revised upward to $1.5 billion, representing approximately a 320 basis point gross margin headwind. Friend explicitly outlined four mitigation levers: supply chain diversification, supplier and retail partner negotiations, internal cost reductions, and price increases passed to consumers. He announced that Nike would implement a "surgical price increase in the U.S. beginning in the fall of 2025."

31.    Consistent with its assertions in the FDRA letter regarding tariff costs being passed down to the consumer, Nike publicly announced that it would be implementing "surgical" price increases in response to the tariffs. Specifically, Nike announced a series of price increases starting on or about June 1, 2025, including a $5 to $10 hike in select footwear and $2 to $10 increase among adult apparel and equipment to defray the estimated $1 billion hit to its business caused by the tariffs.

32.    Nike's price increases were implemented as announced. Effective approximately June 1, 2025, footwear priced between $100 and $150 was raised by $5, and footwear priced above $150—including the Nike Vomero shoes purchased by Plaintiff—was raised by $10. Adult apparel and equipment saw increases of $2 to $10. Across approximately 3,300 SKUs analyzed during the period, footwear prices rose approximately 17%, apparel 14%, and equipment 18%.

33.     Nike's public statements and actions thus confirmed two critical points: first, that tariffs were increasing Nike's costs on imported goods; and second, that Nike was making pricing decisions in direct response to those tariff-driven cost increases. Indeed, Nike did not simply absorb the full cost of the unlawful tariffs; rather, Nike passed on at least part of those costs to consumers through higher retail prices.

34.     Plaintiff and Class members paid tariff-inflated prices at Nike during the Class Period, while Nike now seeks to retain both the consumer pass-through and any government refund of the same unlawful tariff charges.

**E.      Nike is in Line to Reap Tremendous Refunds**

35.     Following the Supreme Court's decision in February 2026, importers that had paid IEEPA tariffs—including Nike—became eligible to pursue refunds of those duties.

36.     Before the Supreme Court struck down the IEEPA tariffs, Nike's executives warned that the company was facing a tariff hit of over $1 billion dollars on an annual basis and implemented tariff price increases amidst those tariffs. Nike is among the country's largest importers of consumer goods and therefore stands to recover substantial sums if tariff refunds are paid by the United States government.

37.     Given Nike's scale as a major importer, Nike can expect to recover significant tariff refunds corresponding to duties it paid during the Class Period. Those expected refunds are especially significant here because Nike previously passed tariff-related cost increases through to consumers in the form of higher retail prices, meaning Nike now seeks to recover from the government duties whose economic burden was borne, in whole or in part, by Plaintiffs and Class members.

38.     In practical terms, Nike stands to receive a windfall: it has already recouped tariff costs from consumers through higher prices, and it now stands in line to recover those same unlawful tariff payments from the federal government.

CLASS ACTION COMPLAINT - 7

## IV.    PLAINTIFF'S ALLEGATIONS

39.    In or around January 16, 2026, Plaintiff purchased a pair of Nike Vomero Plus by You shoes from Nike.

40.    In or around January 25, 2026, Plaintiff purchased a pair of Nike Vomero 18 men's shoes from Nike.

41.    Plaintiff paid full price for both purchases, which included IEEPA tariff fees that were passed through to him by Nike.

42.    Plaintiff has not been refunded the IEEPA tariff fees that he paid to Nike.

## V.    CLASS ACTION ALLEGATIONS

43.    Plaintiff brings this action on behalf of himself and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the Class is defined as follows:

44.    **Nationwide Class**: All customers of Defendant who purchased goods through February 24, 2026, on which Nike passed through illegal IEEPA tariffs (the "Class").

45.    This Nationwide Class shall be referred to herein as the "Class."

46.    Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

47.    Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

48.    The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

49.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

50.     The proposed Class is so numerous that the joinder of all members is impracticable.

51.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

52.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown currently, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process.

53.     **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are questions of law and fact common to the Class that are capable of generating common answers, including: whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein; whether Defendant's conduct was unlawful, unfair, deceptive, misleading, or otherwise actionable under applicable federal and state law; whether Defendant breached duties owed to Plaintiff and Class Members; whether Defendant knew or should have known of the tariffs and custom duties imposed were done so unlawfully; whether Defendant's conduct caused injury to Plaintiff and Class Members; whether Defendant was unjustly enriched as a result of the conduct alleged herein; and whether Defendant is liable to Plaintiff and Class Members for damages, restitution, disgorgement, or other equitable relief.

54.     **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above. Moreover, Plaintiff's claims are typical of the Class Members' claims because Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

55.     **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interest of the members of the Class. Plaintiff and the members of the Class were all assessed tariffs and other collection duties as a result of the tariffs imposed by the United States pursuant to IEEPA. Plaintiff has retained competent counsel experienced in complex litigation and class action litigation. Plaintiff has no antagonistic interests to those of the Class, and Defendant has no defenses unique to Plaintiff.

56.     **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2))**: Defendant has acted on grounds that apply generally to the proposed Class, making declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's uniform practice of collecting tariffs imposed by the United States pursuant to IEEPA from consumers and failing to reimburse consumers for these unlawful tariffs warrants class-wide declaratory and injunctive relief.

57.     **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiff and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

58.     Plaintiff seeks monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from their unfair and unlawful practices, while Plaintiff and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

59.     The common questions raised herein are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

## CAUSES OF ACTION

### VI.     COUNT I
### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Class)

60.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

61.     Plaintiff and Class members conferred a direct financial benefit upon Defendant in the form of the money Defendant received from them in the form of price increases on goods during the period June 1, 2025, through February 24, 2026.

62.     Defendant knowingly and voluntarily received and accepted these benefits.

63.     The tariff-related charges Defendant imposed and collected were unlawful and unauthorized.

64.     Defendant collected and retained funds to which they were not legally entitled.

65.     Defendant retained these funds, and will continue to retain these funds, despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

CLASS ACTION COMPLAINT - 11

66.    It would be inequitable and unjust for Defendant to retain these funds.

67.    Plaintiff and the Class members are entitled to recover from Defendant regardless of whether Nike ultimately receives a refund from the United States. It would be manifestly unjust and inequitable for Defendant to retain money that Plaintiff and the Class members wrongfully paid to Defendant, regardless of whether Defendant is reimbursed any of that money, but that is especially true if Defendant is reimbursed any of that money.

68.    Plaintiff and Class members suffered economic injury as a result of Defendant's unjust retention of these funds.

69.    Defendant was unjustly enriched at the expense of Plaintiff and Class members.

70.    Equity and good conscience require that Defendant disgorges all unlawfully obtained funds and make restitution to Plaintiff and Class members.

## VII.    COUNT II
### MONEY HAD AND RECEIVED
### (ON BEHALF OF PLAINTIFF AND THE CLASS)

71.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

72.    The Supreme Court has determined that the IEEPA tariffs were unlawful at the time they were imposed, and not prospectively after the decision was announced.

73.    Defendant received money from Plaintiff and from each member of the proposed Class in the form of IEEPA tariffs.

74.    In the wake of the Supreme Court's decision, the money paid by Plaintiff and the proposed class to Nike belongs, in equity and good conscience, to Plaintiff and to each member of the proposed Class.

75.    Defendant has not returned the money.

76.    It will give offense to equity and good conscience if Defendant is permitted to retain the IEEPA tariff fees. Plaintiff and the putative class seeks the return of the money in an amount to be proven at trial.

77.     Plaintiff seeks all remedies available under the law, including, if available, actual damages, nominal damages, compensatory damages, punitive damages, and injunctive relief, and other remedies available to them.

### VIII.    COUNT III
### DECLARATORY RELIEF
### (On Behalf of Plaintiff and the Class)

78.     Plaintiff incorporates all previous paragraphs as if fully set forth herein.

79.     An actual, justiciable controversy exists between Plaintiff and Defendant regarding the rights and obligations of the parties with respect to IEEPA tariff fees collected by Defendant from Plaintiff and Class Members. This controversy is not hypothetical or abstract.

80.     Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a.     Defendant engaged in uniform conduct of charging tariffs authorized by the IEEPA to consumers such as Plaintiff and Class Members when those tariffs and customs duties were not lawfully authorized;

b.     Defendant breached duties owed to Plaintiff and Class Members;

c.     Defendant knew or should have known that the tariffs and customs duties were unlawfully imposed;

d.     Defendant's conduct caused injury to Plaintiff and Class Members; and

e.     Defendant is obligated to return to Plaintiff and proposed Class Members all IEEPA tariffs and customs duties collected from them together with interest.

81.     Declaratory relief is necessary and appropriate because Defendant collected duties and fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized and Defendant has not returned those sums to consumers who paid them. Without judicial intervention, Plaintiff and the Class have no assurance that Defendant will return the unlawfully collected sums.

82.    Class members have no alternative remedy. Because Defendant served as the importer of record, only Defendant has standing to seek a refund from the government. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendant. Without the declaratory relief sought in this action, Class members will be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay.

## IX.    COUNT IV
## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
## (ON BEHALF OF PLAINTIFF AND THE CLASS)

83.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

84.    Nike is a "person" engaged in "trade" or "commerce" within the meaning of the Oregon Unlawful Trade Practices Act.

85.    Nike engaged in the conduct complained of throughout this complaint at its headquarters in Oregon, and its decisions and conduct uniformly impacted residents of Oregon and throughout the United States.

86.    Nike engaged in unlawful trade practices in connection with the sale of consumer goods, including the Nike Vomero shoes purchased by Plaintiff, by: representing that the tariff-related charges assessed to consumers were lawfully authorized when they were not; charging consumers a tariff surcharge on goods subject to tariffs that were subsequently determined by the Supreme Court to be unlawful; retaining the economic benefit of those unlawful tariff charges from consumers while simultaneously seeking a refund of the same tariff payments from the federal government; and engaging in deceptive and unfair pricing practices by presenting unlawful tariff costs to consumers as legitimate, legally mandated charges with no disclosure that those tariffs were of questionable legal validity.

87.    Nike's conduct constitutes unfair, unconscionable, and deceptive acts and practices in trade or commerce. Nike engaged in unfair and deceptive acts by: (i) charging

CLASS ACTION COMPLAINT - 14

customers a tariff surcharge; and (ii) retaining tariff refunds despite having passed the costs to its customers. Nike's conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

88.    Nike knew or should have known at the time it imposed tariff-driven price increases on consumers that the IEEPA tariffs were of questionable legality. Numerous importers challenged the legality of the IEEPA tariffs in the United States Court of International Trade, arguing that the President lacked statutory authority under IEEPA to impose tariffs of that nature. Nike joined the FDRA letter in April 2025, acknowledging the consumer impact of those tariffs, and yet continued to charge, collect, and retain tariff-inflated prices from consumers.

89.    Nike's conduct also constitutes unfair business acts and practices because it caused substantial injury to consumers that was not reasonably avoidable by those consumers—who had no meaningful ability to contest or avoid tariff-related surcharges at the point of purchase—and the harm to consumers is not outweighed by any countervailing benefit to consumers or competition.

90.    Plaintiff and members of the putative Class suffered an ascertainable loss of money as a direct result of Nike's unlawful trade practices, having paid tariff-inflated prices for Nike products that would not have been imposed absent the unlawful IEEPA tariff regime.

91.    Plaintiff and members of the putative Class are entitled to recover their actual damages, statutory damages, attorney fees, and costs as available under the Oregon Unlawful Trade Practices Act.

## X.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A.    For an order certifying the Class and naming Plaintiff as the representative for the Class and Plaintiff's attorneys as Class Counsel;

CLASS ACTION COMPLAINT - 15

B.      For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C.      For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive and declaratory relief as pleaded or as the Court may deem proper;

H.      For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.      For an order providing for all other such equitable relief as may be just and proper.

## XI.      DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

RESPECTFULLY SUBMITTED AND DATED this 12th day of May, 2026.

TERRELL MARSHALL LAW GROUP PLLC

By: /s/ Jennifer Rust Murray, OSB #100389
    Jennifer Rust Murray, OSB #100389
    Email: jmurray@terrellmarshall.com
    Toby J. Marshall, *Pro Hac Vice Forthcoming*
    Email: tmarshall@terrellmarshall.com
    1700 Westlake Avenue North, Suite 300
    Seattle, Washington 98109
    Telephone: (206) 816-6603

CLASS ACTION COMPLAINT - 16

Matthew E. Lee, *Pro Hac Vice Forthcoming*
Email: mlee@leesegui.com
Jeremy R. Williams, *Pro Hac Vice Forthcoming*
Email: jwilliams@leesegui.com
Patrick M. Wallace, *Pro Hac Vice Forthcoming*
Email: pwallace@leesegui.com
LEE SEGUI PLLC
421 North Harrington Street, Suite 460
Raleigh, North Carolina 27603
Telephone: (855) 496-7500

*Attorneys for Plaintiff & Proposed Class*

CLASS ACTION COMPLAINT - 17